UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,**<br><br>and<br><br>**COALITION FOR A DEMOCRATIC WORKPLACE,**<br><br>    Plaintiffs,<br><br>        v.<br><br>**NATIONAL LABOR RELATIONS BOARD,**<br><br>    Defendant. | Civil Action No.  11-2262 (JEB) |

**MEMORANDUM OPINION**

According to Woody Allen, eighty percent of life is just showing up.  When it comes to satisfying a quorum requirement, though, showing up is even more important than that.  Indeed, it is the only thing that matters – even when the quorum is constituted electronically.  In this case, because no quorum ever existed for the pivotal vote in question, the Court must hold that the challenged rule is invalid.

On December 22, 2011, the National Labor Relations Board published a rule that amended the procedures for determining whether a majority of employees wish to be represented by a labor organization for purposes of collective bargaining.  Two of the Board's three members voted in favor of adopting the final rule.  The third member of the Board, Brian Hayes, did not cast a vote.  Because Hayes had previously voted against initiating the rulemaking and against proceeding with the drafting and publication of the final rule, the Board nevertheless determined

1

that he had "effectively indicated his opposition."

In this suit, Plaintiffs – the Chamber of Commerce of the United States of America and the Coalition for a Democratic Workforce – challenge the final rule on myriad grounds. The Court, however, reaches only their first contention: that the rule was adopted without the statutorily required quorum. Absent limited circumstances not present here, the Board must muster a quorum of three members in order to act. Because Member Hayes did not participate in the decision to adopt the final rule, Plaintiffs argue, the other two members of the Board lacked the authority to effect its promulgation. The NLRB, on the other hand, maintains that all three members participated in the rulemaking in the relevant sense and, accordingly, that the quorum requirement was satisfied. The agency has now filed a Motion for Summary Judgment and an Alternative Partial Motion to Dismiss, and Plaintiffs have filed a Motion for Summary Judgment.

Plaintiffs are correct. Two members of the Board participated in the decision to adopt the final rule, and two is simply not enough. Member Hayes cannot be counted toward the quorum merely because he held office, and his participation in earlier decisions relating to the drafting of the rule does not suffice. He need not necessarily have voted, but he had to at least show up. At the end of the day, while the Court's decision may seem unduly technical, the quorum requirement, as the Supreme Court has made clear, is no trifle. Regardless of whether the final rule otherwise complies with the Constitution and the governing statute – let alone whether the amendments it contains are desirable from a policy perspective – the Board lacked the authority to issue it, and, therefore, it cannot stand. The Court, consequently, will grant Plaintiffs' Motion and deny Defendant's.

**I.        Background**

The National Labor Relations Act, codified at 29 U.S.C. § 151 *et seq.*, governs, *inter alia*, the formation of collective-bargaining relationships between employers and employees in the private sector, and the NLRB is the federal agency charged with administering the statute. See generally id. §§ 151-57. At the time of the agency's creation, the NLRA provided that the Board would consist of three members and that two of those members would constitute a quorum. See Act of July 5, 1935 ("Wagner Act"), ch. 372, §§ 3(a)-(b), Pub. L. No. 74-198, 49 Stat. 449, 451. With the enactment of the Taft-Hartley Act in 1947, however, the Board's membership was increased from three to five. See 29 U.S.C. § 153(a); see also New Process Steel, L.P. v. NLRB, 130 S. Ct. 2635, 2638 (2010). Taft-Hartley concurrently altered the quorum requirement, providing that, except in limited circumstances not present here, "three members of the Board shall, at all times, constitute a quorum." See 29 U.S.C. § 153(b); see also New Process Steel, 130 S. Ct. at 2638. It now takes three Board members, in other words, for the Board to do business.

The five-member Board is endowed with the "authority from time to time to make, amend, and rescind, in the manner prescribed by [the Act], such rules and regulations as may be necessary to carry out the provisions of this [Act]." 29 U.S.C. § 156. One area in which the Board has exercised this authority relates to Section 7 of the NLRA, 29 U.S.C. § 157, which guarantees the right of employees "to bargain collectively through representatives of their own choosing . . . and to refrain from . . . such activities." Id. When employees and their employer are unable to agree whether the employees should be represented by a union for purposes of collective bargaining, it falls to the Board to resolve the question of representation. See 29 U.S.C. § 159.

Although Congress set out the basic steps by which such a question is to be settled, it left it to the Board to fill in the gaps. See NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946) ("Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees."). "The Board has exercised this discretion through two mechanisms. First, the Board has promulgated binding rules of procedure, most of which are found in 29 C.F.R. part 102, subpart C. Second, the Board has interpreted and occasionally altered or created its representation case procedures through adjudication." Final Rule, 76 Fed. Reg. 80,138, 80,138 (Dec. 22, 2011) (footnote omitted).

On June 22, 2011, the Board formally proposed to amend its procedures for resolving disputes about union representation in a Notice of Proposed Rulemaking (NPRM), which was issued by a 3-1 vote of the four members then holding office. NPRM, 76 Fed. Reg. 36,812, 36,812 (June 22, 2011); see also Separate Concurring Statement by Chairman Pearce, 77 Fed. Reg. 25,548, 25,548 (Apr. 30, 2012). Then-Chairman Wilma Liebman, Member Craig Becker, and Member Mark Pearce voted in favor of publishing the NPRM; Member Brian Hayes dissented. See NPRM, 76 Fed. Reg. at 36,829-33. The proposed rule, the NPRM advised, would "remove unnecessary barriers to the fair and expeditious resolution of questions concerning representation." Id. at 36,812.

More than 65,000 written comments were received in response. See Final Rule, 76 Fed. Reg. at 80,140. In July 2011, the Board held two full days of hearings on the proposed rule. See id. at 80,142. All four Board members participated, and 66 individuals and organizations testified. See id. In the midst of the Board's subsequent deliberations, however, then-Chairman Liebman's term expired, leaving the Board with only three members. See Separate Concurring

4

Statement by Chairman Pearce, 77 Fed. Reg. at 25,548.  In addition, "the Board . . . faced the imminent end of the recess appointment of Member Becker and with it, the indefinite loss of a quorum."  Id. (footnote omitted).

At a public meeting held on November 30, 2011, the remaining three members of the Board considered a resolution to "[p]repare a final rule to be published in the Federal Register containing" eight of the amendments proposed in the NPRM and to "[c]ontinue to deliberate on the remainder" of the proposed amendments.  See Def.'s Mot., Exh. 2 (NLRB Resolution No. 2011-1).  This proposal was intended to allow for those eight amendments to be published in a final rule before the expiration of Member Becker's appointment.  See Separate Concurring Statement by Chairman Pearce, 77 Fed. Reg. at 25,548.  The resolution was passed by a vote of 2-1, with Member Hayes again dissenting.  See Final Rule, 76 Fed. Reg. at 80,147 ("Member Hayes attended [the November 30th meeting], participated fully, and voted against proceeding."); Separate Concurring Statement by Chairman Pearce, 77 Fed. Reg. at 25,548.

Consistent with that resolution, the final rule that is the subject of this case was prepared.  The Chairman circulated a draft via email on December 9, 2011, and another draft was circulated via email on December 12.  See Def.'s Opp., Exh. 1 (Decl. of Brian Hayes), ¶¶ 4-5.[1]  The next day, December 13, another draft was circulated in the Board's internal Judicial Case Management System (JCMS).  See id., ¶ 6.

---

[1] Member Hayes's declaration, which was submitted by the NLRB along with its Opposition to Plaintiffs' Motion, was not part of the administrative record.  While the Court's review of agency action is ordinarily limited to the materials before the agency at the time of its action, other evidence may be considered when a challenge is brought to "the procedural validity of [an agency's] action."  Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989); see also Franks v. Salazar, 751 F. Supp. 2d 62, 68 (D.D.C. 2010); The Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior, 667 F. Supp. 2d 111, 115 (D.D.C. 2009).  Here, both parties rely on Hayes's declaration because the details it provides about his participation in the rulemaking process are necessary to their arguments about whether he may be counted as part of a quorum.  Indeed, Plaintiffs' quorum-based argument is precisely the type of procedural challenge for which extra-record evidence is necessary.  Because Defendant submitted the declaration, both parties refer to it, and the Court agrees that considering his statement is necessary "to enable judicial review to become effective," Esch, 876 F.2d at 991, the Court will consider the declaration in analyzing the quorum issue.

> JCMS is the ordinary procedure for circulating and revising draft decisions, rules, and other documents, and for voting – generally either "approved" or "noted" with an attached dissent or concurrence. The case or rule is moved to issuance when votes are recorded for all Board Members as to the final versions of all circulated documents.

Id., ¶ 6. "In situations where a particular Board Member has not voted and immediate action is desired, the Executive Secretary or Solicitor may convey, by phone or email, a request to act." Id., ¶ 11.

On December 14, 2011, the Chairman distributed by email a draft Order, which directed the Solicitor to publish the final rule in the Federal Register "immediately upon approval of a final rule by a majority of the Board." Def.'s Mot., Exh. 3 (Order, Dec. 15, 2011) at 1; see Hayes Decl., ¶ 7. The Order provided that any concurring or dissenting statements would be published in the Federal Register after the publication of the final rule itself, and it also stated that the Order would "constitute the final action of the Board in this matter." See Order, Dec. 15, 2011, at 1-2. All three members voted on this procedural Order by email on December 14 or 15, with Chairman Pearce and Member Becker voting in its favor and Member Hayes voting against. See Hayes Decl., ¶ 8.

Meanwhile, the draft final rule continued to be revised. A modified draft was circulated via JCMS on December 15. Id., ¶ 9. That same day, an email was sent from the Chairman's Chief Counsel to Hayes's Chief Counsel, with Hayes and others copied, asking whether Hayes wished to include a dissenting statement in the final rule. Id. Later that day, Hayes "authorized [his] Chief Counsel to advise that [he] would not attach any statement to the Final Rule" so long as, consistent with the Board's Order, he would be able to add a dissent later on. Id.

On December 16, the final version of the rule was circulated in JCMS. Id., ¶ 10. Both Chairman Pearce and Member Becker voted to approve the rule, and it was forwarded by the

Solicitor for publication in the Federal Register that same day. See id., ¶ 10. Hayes did not vote. Id., ¶¶ 10-11. Nor was he "asked by email or phone to record a final vote in JCMS before or after the Final Rule was modified, approved by Chairman Pearce and Member Becker, and forwarded by the Solicitor for publication on December 16." Id., ¶ 11. Hayes has averred that "[a]fter [he] voted against the procedural Order on December 15 and indicated that [he] would not attach a personal statement to the Final Rule, [he] gave no thought to whether further action was required of [him]." Id. The rule was nonetheless published in the Federal Register on December 22, 2011. See Final Rule, 76 Fed. Reg. at 80,138. Pearce's concurring statement and Hayes's dissenting statement were subsequently published on April 30, 2012, the same day the rule took effect. See Separate Concurring and Dissenting Statements, 77 Fed. Reg. at 25,548.

In the interim, however, Plaintiffs the Chamber of Commerce of the United States of America and the Coalition for a Democratic Workforce, two organizations that together represent thousands of businesses that are subject to the final rule, filed suit. See First Am. Compl., ¶¶ 4-9. Their First Amended Complaint brings numerous challenges both to the procedure by which the rule was adopted and to its substance. Id., ¶¶ 34-76. The parties have now filed Cross-Motions for Summary Judgment, and the NLRB moves in the alternative for partial dismissal. In addition, several organizations have jointly filed a brief as *amici curiae* in support of Plaintiffs' Motion.

## II.   Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the

substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision.  The standard set forth in Rule 56(c), therefore, does not apply because of the limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing National Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)).  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Id. (internal citations omitted).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA and governing law.  See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

**III.   Analysis**

Except under circumstances that neither side argues obtain here, the NLRA provides that "three members of the Board shall, at all times, constitute a quorum of the Board . . . ." 29 U.S.C. § 153(b); see also New Process Steel, 130 S. Ct. at 2638-45.  It is undisputed that this requirement applies to the promulgation of rules, and it is similarly undisputed that two members of the Board – Pearce and Becker – voted to adopt the final rule and should thus be counted

toward the quorum. At issue with respect to Plaintiff's quorum-based claim, then, is only whether the third member, Hayes, may also be counted.

The NLRB's arguments that he should be considered part of the quorum despite his not having voted on the adoption of the final rule are twofold. First, the agency maintains that Hayes's participation in two earlier decisions relating to the final rule's publication – specifically, the November 30th decision to adopt a resolution providing that the final rule should be prepared and the December 15th decision to issue a procedural order providing that the final rule should be published upon a majority vote to adopt it – sufficed to satisfy the NLRA's quorum requirement with respect to the rule's promulgation. Second, even if Hayes's participation in those earlier votes does not suffice, the NLRB contends that he was "present" for the December 16th vote to adopt the rule and should thus be counted toward the quorum.

The Court will address each of these arguments in turn. Ultimately, it concludes that the December 16th decision to adopt the final rule, not the earlier votes, was the relevant agency action. A quorum, accordingly, must have participated in that decision. And although Hayes need not have voted in order to be counted toward the quorum, he may not be counted merely because he was a member of the Board at the time the rule was adopted. More was required. Because the final rule was promulgated without the requisite quorum, the Court must set it aside on that ground and does not reach Plaintiffs' remaining arguments.

A. Prior Decisions Not Final Agency Action

The NLRB argues in its Motion that the December 15th procedural Order was the agency's final action with respect to the rulemaking. See Def.'s Mot. at 42-43. Because Member Hayes voted on that Order, it argues, 29 U.S.C. § 153(b)'s quorum requirement was satisfied regardless of what took place afterward. See id. The agency refines its position

9

somewhat in its Opposition to Plaintiffs' Motion, emphasizing that Hayes participated in two earlier decisions relating to the final rule – those regarding the December 15th Order and the November 30th Resolution – and that his votes in those proceedings constitute participation in the rulemaking. See Def.'s Opp. at 4-5. Because the December 16th vote to adopt the final rule was the relevant agency action, however, the NLRB's focus on these earlier decisions is misplaced.

Borrowing from precedent concerning ripeness and finality – which, while not a perfect analog, is certainly informative – it is well established that to be "final," an agency action "must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature." Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8, 13 (D.C. Cir. 2005) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)) (internal quotation marks omitted). "[T]he action must 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" Id. (quoting Bennett, 520 U.S. at 178). The November 30th resolution plainly does not fit this bill. Nor does the December 15th Order, despite the fact that it purports to be the agency's final action. See Order, Dec. 15, 2011, at 2 ("[T]his Order shall constitute the final action of the Board in this matter.").

No rights or legal consequences derive from the December 15th Order. The Order was simply a procedural one, addressing the timing of the rule's publication as well as the subsequent publication of any separate concurring or dissenting statements. Indeed, even while the Order professes to be the agency's final action, it contemplates the subsequent "approval of a final rule by a majority of the Board." See id. at 1. Until and unless the agency voted to adopt the final rule, its terms would not be effective. See id. at 1. The Order, standing alone, does nothing at all. Its effect is expressly made contingent upon subsequent agency action. See Rochester Tel. Corp. v. United States, 307 U.S. 125, 130 (1939) (non-final agency order "does not of itself adversely

affect complainant but only affects his rights adversely on the contingency of future administrative action"). It is that subsequent action – the decision to actually adopt the final rule – that was the Board's final action in relation to the rulemaking.

Although within the confines of the APA and its governing statute an agency is generally free to devise its own procedures, see Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524 (1978), it cannot evade the statutorily mandated quorum requirement simply by designating interlocutory decisions as final actions. The NLRB, in other words, may not transform a procedural order into the relevant final action merely by its say-so. As the Supreme Court has emphasized, the quorum requirement is not a mere "technical obstacle[ ]" an agency may contrive to avoid. See New Process Steel, 130 S. Ct. at 2644. Rather, it is a limit on the agency's power to act. Even if, as the NLRB insists, agencies may alter the text of a final rule after the official vote on its adoption, see Def.'s Mot. at 43, a quorum still must participate in that official vote, regardless of any intermediate decisions that may have preceded it.

What if, for example, one of the three Board members had been tragically killed following the vote on the December 15th procedural Order but prior to the December 16th vote to adopt the final rule? Or what if one of the three Board members' terms had expired prior to the vote to adopt the final rule? Under the NLRB's theory, the two remaining members could nevertheless have adopted the rule in either scenario. Such a result, however, would render the three-member quorum requirement meaningless. With Taft-Hartley, Congress made the conscious decision to increase the quorum requirement from two to three members. "[H]ad Congress wanted to provide for two members alone to act as the Board, it could have maintained

the NLRA's original two-member Board quorum provision." New Process Steel, 130 S. Ct. at 2641 (citing 29 U.S.C. § 153(b)).

In the end, deciding whether to adopt a regulation that will bind the public is perhaps the agency's weightiest responsibility. Myriad subsidiary decisions are required in the process of promulgating regulations, but it is the final decision to adopt (or not to adopt) a given rule that transforms words on paper into binding law. That decision, which in this case took place on December 16, 2011, required a quorum.

B. Quorum Requirement

To satisfy 29 U.S.C. § 153(b), then, a quorum must have participated in the December 16th decision to adopt the final rule. As the Supreme Court recently explained with reference to the NLRA's quorum requirement, "[a] quorum is the number of members of a larger body that must participate for the valid transaction of business." New Process Steel, 130 S. Ct. at 2642. Put differently, the statute's quorum provision serves to "define the number of members who must participate in a decision." Id. at 2643. Whether "participation" is the appropriate term and what constitutes "participation" in an electronic vote are the questions on which this case hinges.[2]

---

[2] Neither party mentions the deferential Chevron standard for reviewing an agency's interpretation of the statutes it administers in their arguments on the quorum issue. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). Chevron is also conspicuously absent from both the majority opinion and the dissent in New Process Steel. See "The Supreme Court: 2009 Term – Leading Cases," 124 Harv. L. Rev. 380 (2010) (observing that "[t]he Court never addressed the Chevron framework" in New Process Steel and considering the import of "Chevron's absence"); Julia Di Vito, Note, "The New Meaning of New Process Steel, LP v. NLRB," 46 Wake Forest L. Rev. 307, 325-26 (2011) (noting the "curious" omission of any reference to Chevron in what appeared to be "the prototypical Chevron case"). Indeed, that case has been read in conjunction with other precedents to suggest that Chevron may not apply to agencies' interpretations of their own jurisdiction or power to act. See, e.g., "The Supreme Court: 2009 Term – Leading Cases," 124 Harv. L. Rev. at 385-90. As the question of statutory interpretation presented here both concerns the NLRB's statutory jurisdiction and does not implicate the agency's expertise, Chevron may indeed not be applicable. But see, e.g., Oklahoma Natural Gas Co. v. FERC, 28 F.3d 1281, 1283-84 (D.C. Cir. 1994) (questioning Chevron's applicability to jurisdictional questions but ultimately proceeding under the Chevron framework). The Court, however, need not so decide. Although it will follow the New Process Steel Court in analyzing this issue without Chevron, the Court finds that the NLRA unambiguously

Despite the Supreme Court's repeated use of the term "participate" in New Process Steel, a 2010 case that turned on the proper construction of the NLRA's quorum provision, see generally 130 S. Ct. at 2638, the NLRB quibbles over its appropriateness. "Mere presence," it argues, is enough to constitute a quorum. See Def.'s Opp. at 3 (citing United States v. Ballin, 144 U.S. 1, 5-6 (1892)). If the difference in terminology matters – and the Court is not convinced that it does – Plaintiffs, whose argument for "participation" over "presence" relies on a more recent case involving the same statute at issue here, have the better of the dispute. Indeed, the NLRB itself interpreted the NLRA's quorum requirement to "denote[ ] that the Board may legally transact business when three of its members are participating" in its Brief in New Process Steel. See Br. of Respondent NLRB at 19, New Process Steel, 130 S. Ct. 2635 (emphasis added).

To the extent the agency's argument is simply that a member need not vote in order to form part of the quorum, however, the Court certainly agrees. Indeed, it is axiomatic that "[a]n abstaining voter . . . is counted in determining the presence of a quorum." 59 Am. Jur. 2d Parliamentary Law § 9; see also Ballin, 144 U.S. at 5-6; 2 Am. Jur. 2d Admin. Law § 83 ("One who merely abstains, however, is counted toward the quorum."). The NLRB is correct, therefore, that Member Hayes thus need not have cast a vote in order to be counted.

But whether the standard is "mere presence" or "participation," the difficulty is in applying that standard to an online vote. When the very concept of a quorum seems designed for a meeting in which people are physically present in the same place, what does it mean to be present or to participate in a decision that takes place across wires? In other words, how does one draw the line between a present but abstaining voter (who may be counted toward a quorum)

---

precludes the agency's preferred interpretation of the quorum requirement. Analyzing this question through Chevron's lens, accordingly, would yield the same result.

13

and an absent voter (who may not be) when the voting is done electronically? Even if "mere presence" is enough, the translation of that physicality-based concept to the JCMS process, which "automatically calls for an electronic vote when drafts are circulated," Hayes Decl., ¶ 11, is not obvious.

As a preliminary matter, while electronic voting is relatively new, the idea that "the quorum acting on a matter need not be physically present together at any particular time" is not. Braniff Airways, Inc. v. Civil Aeoronautics Board, 379 F.2d 453, 460 (D.C. Cir. 1967). That the Board may "proceed with its members acting separately, in their various offices, rather than jointly in conference," accordingly, is not controversial. See id. (describing the "notation voting" system). When a full quorum participates – usually, by voting – the use of an electronic voting system that permits the Board to reach a decision without actually being together is perfectly appropriate.

Member Hayes, however, did not vote on the adoption of the final rule when it was circulated through the JCMS system on December 16, 2011. See Hayes Decl., ¶ 11. As the rule was forwarded for publication that same day, see id., it must only have been a matter of hours during which he had the opportunity to do so. When no vote or other response was received from Hayes, no one requested that he provide one, per the agency's usual practice. See id. The NLRB's claim that Hayes was part of the quorum that adopted the final rule, then, is based only on the fact that he was a member of the Board at the time the rule was circulated and thus was sent a notification that it had been called for a vote.

The Supreme Court clearly stated in New Process Steel, however, that a member may not be counted toward a quorum simply because he holds office. See 130 S. Ct. at 2643 n.4. "The requisite membership of an organization, and the number of members who must participate for it

14

to take an action, are two separate (albeit related) characteristics." Id.; see also FTC v. Flotill Prods., Inc., 389 U.S. 179, 183-84 (1967) (concluding that Commissioner who declined to participate could not be counted toward quorum). Distinguishing between an organization's total membership and those members who are actually a part of a given decision, moreover, is consistent with the way quorum requirements operate in public and private organizations of all sizes. See, e.g., Ballin, 144 U.S. at 5-6 (explaining the quorum requirement for the House of Representatives); 18 C.J.S. Corporations § 454 (explaining quorum requirements with respect to shareholders' meetings); 2 Fletcher Cyc. Corp. § 419 (explaining quorum requirements for actions by boards of directors). The NLRB's suggestion that the quorum requirement was satisfied on the ground that three members held office when the rule was approved, see, e.g., Final Rule, 76 Fed. Reg. at 80,146 ("The Board currently has three members, a lawful quorum under Section 3(b) of the Act."), contradicts the clear pronouncements of the Supreme Court as well as common practice (and common sense). Something more than mere membership is necessary.

Unfortunately, however, nothing more took place here. Member Hayes was sent a notification that the final rule had been circulated for a vote, but he took no action in response. Assuming that no "further action was required of [him]," Hayes Decl., ¶ 11, he simply did not show up – in any literal or even metaphorical sense. Had he affirmatively expressed his intent to abstain or even acknowledged receipt of the notification, he may well have been legally "present" for the vote and counted in the quorum. Had someone reached out to him to ask for a response, as is the agency's usual practice where a member has not voted, or had a substantial amount of time passed following the rule's circulation, moreover, it would have been a closer case. But none of that happened here. In our prior world of in-person meetings, Hayes's actions

are the equivalent of failing to attend, whether because he was unaware of the meeting or for any intentional reason. In any event, his failure to be present or participate means that only two members voted, and the rule was then sent for publication that very day.

That Member Hayes issued a dissenting statement months later, furthermore, does not cure the quorum defect. See Separate Concurring Statement by Member Hayes, 77 Fed. Reg. 25,548, 25,559 (Apr. 30, 2012). Indeed, the agency does not appear to argue that it does. See Def.'s Reply to Pl.'s Response to Def.'s Notice at 1-2, ECF No. 38. Even if his *post hoc* dissent were properly considered by the Court – despite its having come into existence after the events in question – it still does not change the fact that no quorum existed to adopt the rule. As the Board made clear in the Federal Register, "neither statement" – Chairman Pearce's or Member Hayes's – "constitutes part of the rule or modifies the rule or the Board's approval of the rule in any way." Separate Concurring and Dissenting Statements, 77 Fed. Reg. at 25548.

In arguing that the electronic transmission to Hayes of a notification that the rule had been put to a vote is enough, the NLRB harps on United States v. Ballin, a case addressing the quorum requirement for the U.S. House of Representatives. See 144 U.S. at 5-6. "What did the non-voting members in Ballin do to constitute the quorum?" the NLRB rightly asks. See Def.'s Opp. at 3 (emphasis added). "They were identified as sitting in their seats when the U.S. House of Representatives called the question for a vote. And then, they did nothing. They did not have to do anything: the quorum was created by their mere presence." Id. Although the members of the House need not have taken any action after they showed up for the vote, the NLRB's argument only confirms that they needed to actually be there in the first place. See Ballin, 144 U.S. at 5-6. In other words, Ballin fully supports the proposition that merely holding office is not

16

enough and confirms that an individual needs to <u>something</u> – that is, he needs to show up – in order to be counted toward a quorum.

The NLRB further protests that there is no basis "for indefinitely postponing adoption of the final rule and for, in essence, permitting one Member to exercise what would amount to a minority veto over a proper exercise of the Board's rulemaking authority." Final Rule, 76 Fed. Reg. at 80,147. There is no suggestion, however, that this is what happened here. Indeed, Hayes himself has averred that he neglected to vote on the final rule not out of an intent to abstain or to block the rule's promulgation, but rather because he did not realize that his further participation was required. <u>See</u> Hayes Decl., ¶ 11. The other members of the Board appear to have been under a similar misimpression, as the text of the final rule suggests that they believed that it was enough that Member Hayes had "effectively indicated his opposition." Final Rule, 76 Fed. Reg. at 80,146. In any event, while the Court need not decide whether a member of the Board could intentionally prevent the formation of a quorum, it is worth noting that such things happen all the time. <u>See, e.g.</u>, Monica Davey, "Wisconsin Bill in Limbo as G.O.P. Seeks Quorum," N.Y. Times, A14 (Feb. 18, 2011).

In the end, the Court recognizes that its decision not to reach the merits here may be unsatisfying to the NLRB, as well as to the many employers and employees who are affected by the rule's provisions. But to do so would degrade the quorum requirement from a fundamental constraint on the exercise of the Board's power to an "easily surmounted technical obstacle[ ] of little to no import." <u>New Process Steel</u>, 130 S. Ct. at 2644. The NLRB is a "creature of statute" and possesses only that power that has been allocated to it by Congress. <u>See</u> <u>Michigan v. EPA</u>, 268 F.3d 1075, 1081 (D.C. Cir. 2001). Indeed, "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."

Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).  As the final rule was promulgated without the requisite quorum and thus in excess of that authority, it must be set aside.

In so doing, however, the Court emphasizes that its ruling need not necessarily spell the end of the final rule for all time.  The Court does not reach – and expresses no opinion on – Plaintiffs' other procedural and substantive challenges to the rule, but it may well be that, had a quorum participated in its promulgation, the final rule would have been found perfectly lawful.  As a result, nothing appears to prevent a properly constituted quorum of the Board from voting to adopt the rule if it has the desire to do so.  In the meantime, though, representation elections will have to continue under the old procedures.

**IV.     Conclusion**

For the foregoing reasons, the Court will issue a contemporaneous Order granting Plaintiffs' Motion for Summary Judgment and denying Defendant's.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 14, 2012